UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In Re:                                              Chapter 7

Javier Castagnola                                   Case No. 8-14-75123

_____Debtor_____


Michaels Electrical Supply Corp.

                        Plaintiff
                                                    Adversary Proceeding No.
                                                    8-15-8163
        Against

Javier Castagnola

_____Defendant_____



Memorandum in Support of Motion to Dismiss



Lawrence Katz
Law Office of Lawrence Katz
445 Central Avenue Suite 201
Cedarhurst New York 11516
516-374-2118

I.      **PRELIMINARY STATEMENT**

The Defendant/Debtor, Javier Castagnola seeks dismissal of the

Amended Complaint pursuant to Rule 12(b)(6)of the Federal Rules of Civil

Procedure, made applicable here under Federal Rule of Bankruptcy Procedure

7012, for "failure to state a claim upon which relief can be granted." Fed.RCiv.P.

12(b)(6); Fed. R. Bankr. P. 7012.  A Rule 12(b)(6) motion tests the sufficiency of a

complaint's factual allegations. Bell Atl. Corp. v. Twombly. 550 U.S. 544.

**II. FACTS OF THE CASE**

The fact of the case are to be taken from the amended complaint.

According to the amended complaint the plaintiff/creditor sells electrical supplies.

(Amended Complaint paragraph 4)  Defendant/debtor Javier Castagnola was in

the construction business. (Amended Complaint paragraph 5) During the period

of December 2007 through April 2008 the plaintiff sold to defendant's company

electrical supplies on credit for various jobs.  (Amended Complaint Paragraph 10)

The exhibits to the complaint contain various documentation which it is claimed

demonstrate that the defendant was sold various supplies by plaintiff to be used

for the improvement of real property at various locations.  (Amended Complaint

paragraphs 10-16) The amended complaint itself contains no other facts but rather contains legal conclusions.  The amended complaint does not even specify what the total amount of the outstanding invoices is.  In conclusory fashion it states that the debt is non-dischargeable pursuant to 11 USC section 523(a)(4) based upon the debtor's intentional, willful, knowing, reckless failure and/or conscious disregard of his fiduciary duty as trustee under Article 3A of N.Y. Lien Law sections 70, 71. (Complaint paragraphs 30-31)

## III. <u>STANDARD OF REVIEW</u>

### A. <u>Legal Standard for a Motion to Dismiss</u>

Under well-settled principles, when considering a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint are presumed true, and are construed in favor of the pleader. See, e.g., Luedke v. Delta Air Lines, Inc., 159 B.R. 385, 389 (S.D.N.Y.1993) (Patterson, J.)

Nevertheless, dismissal can and should be granted if the plaintiff's allegations, taken as true, along with any inferences that flow from them, are insufficient as a matter of law. See, e.g., Sykes v. James, 13 F.3d 515, 519 (2d Cir.1993), cert. denied, 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994)

(applying the standard discussed above but nevertheless dismissing, where claims for relief were legally insufficient); In re 80 Nassau Assocs., 169 B.R. 832, 841 (Bankr.S.D.N.Y.1994) (Bernstein, C.J.) (applying this standard and granting motion to dismiss, with leave to amend, where allegations did not support claim of equitable subordination).

A defendant is entitled to fair notice of a plaintiff's claim and the grounds upon which it rests so as to prepare an appropriate defense. Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir.1991). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U. S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 (citing *Papasan* v. *Allain*, 478 U. S. 265, 286(1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U. S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557. "Factual

allegations must be enough to raise a right to relief above the speculative level,"

and create a plausible entitlement for such relief. *Twombly*, 550 U.S. at 555.

### B. Legal Standard for Pleading under §523(a)(4)

In addition, a § 523(a)(4) cause of action must satisfy the heightened pleading

standards of Rule 9(b). Santaro v. Sgroi, 2010 WL 3825643, at *7 (N.D.N.Y. 2010);

In re Rosen, 151 B.R. 648, 656 (Bankr. E.D.N.Y. 1993) Am. Honda Fin. Corp. v.

Ippolito (In re Ippolito) (Bankr. E.D.N.Y., 2013) In alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally.  Fed.R.CIV.P. 9(b); Fed. R. Bankr. P. 7009.

To satisfy the first part of Rule 9(b), the particularity requirement, "the

pleading must set forth the alleged fraudulent statements, identity of the

speaker, time and place of the statements, and nature of the misrepresentation."

*Id*., citing Acito v. IMCERA Group, 47 F.3d 47, 51-52 (2d Cir. 1995). To satisfy the

second part of Rule 9(b), "state of mind can be 'averred generally,' [but] must not

be mistaken for 'a license to base claims of fraud on speculation and conclusory

allegations.'" Id., quoting Acito, 47 F.3d at 52. Thus, "plaintiffs must allege facts

that give rise to a strong inference of fraudulent intent." Id. This inference may be

established either "(a) by alleging facts to show that defendant had both motive

and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness." Acito, 47 F.3d

at 52, quoting Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

It is not a defendant's fraudulent intent that must be pleaded with particularity,

but the circumstances constituting fraud.


## IV. LEGAL ANALYSIS


    In order to prevail on a claim of nondischargeability under § 523(a) (4), the

Supreme Court has held that the burden is on the party claiming non-

dischargeability. The courts have repeatedly stressed that the 523(a) exceptions

to discharge must be strictly construed in favor of the debtor in order to comport

with the "fresh start" policy underlying the Bankruptcy Code. *Gleason v.*

*Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Household Finance Corp. v.*

*Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio),* 91 F.3d 296, 300 (2d Cir.1996).

It is clear from the amended complaint that the plaintiff's claim of non-discharge-ability is based solely upon 11 U.S.C. section 523(a)(4).  (Amended Complaint paragraph 30-31)  However, 523(a)(4) allows for a claim of non-discharge-ability for fraud or defalcation while acting in a fiduciary capacity or for embezzlement, or larceny.  Although the amended complaint raises the issue of the defendant acting in his fiduciary capacity nowhere is the word fraud or defalcation mentioned.   The allegations do allege in conclusory fashion the Javier Castagnola committed an act which constitutes larceny.

**A.** **Plaintiff fails to make out a claim for Larceny even in conclusory fashion**

The allegations in the amended complaint our mere legal conclusions and devoid of any factual content.   As used in § 523(a)(4), "larceny" refers to "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the

owner." *In re Balzano,* 127 B.R. 524, 532 (Bankr. E.D.N.Y. 1991). Larceny requires

a showing of actual wrongful intent, *In re Hyman,* 502 F.3d 61, 68 (2d Cir. 2007),

which must exist at the time of the original taking. *In re Scheller,* 265 B.R. 39, 53

(Bankr. S.D.N.Y. 2001). In addition, a § 523(a)(4) cause of action must satisfy the

heightened pleading standards of Rule 9(b). *Santaro v. Sgroi,* 2010 WL 3825643,

at *7 (N.D.N.Y. 2010); *In re Rosen,* 151 B.R. 648, 656 (Bankr. E.D.N.Y. 1993).  There

is no specific allegation that defendant intentionally converted any property

belonging to plaintiff or of anyone else at the time of the original taking.  *Am.*

*Honda Fin. Corp. v. Ippolito (In re Ippolito)* Case No.: 12-70632-ast Adv. Pro. No.:

12-8403-ast (Bankr. E.D.N.Y., 2013)

B. **Defalcation in a Fiduciary Capacity**

Because the allegations in the amended complaint our mere legal

conclusions and devoid of any factual content the claim of non-discharge-ability

pursuant to section 523 must be dismissed.   Although plaintiff has amended its

complaint it still has not met the requirements of either Twombley or Rule 9.

In order to establish that a debt is nondischargeable based on a fiduciary

theory, the creditor must demonstrate three things. *See Klingman v. Levinson*,

831 F.2d 1292, 1295 (7th Cir. 1987); *Chao v. Duncan (In re Duncan),* 331 B.R. 70 at

77 (Bankr. E.D.N.Y. 2005). First, the creditor must show that the debt was incurred

in connection with an express or technical trust. This has been extended to debts

arising out of relationships in which obligations of this nature are imposed by

statute or common law. *Shearson Lehman Hutton, Inc. v. Schulman* (*In re*

*Schulman*), 196 B.R. 688, 697 (Bankr. S.D.N.Y. 1996).     Second, the creditor must

show that the debtor acted in a fiduciary capacity with respect to that trust.

Courts have found that an attorney-client relationship is a fiduciary relationship

for purposes of this element. *Zois v. Cooper (In re Zois*), 268 B.R. 890, 894 (S.D.N.Y.

2001), aff'd, 73 Fed. App'x 509 (2d Cir. 2003) (holding that "[a]n attorney-

client

relationship forms a fiduciary bond under Section 523(a)(4)").     And finally, the

creditor must show that the debtor engaged in fraud or a defalcation within the

meaning of bankruptcy law. The Supreme Court has recently observed that

"defalcation" in this context requires scienter - that is, "a culpable state of mind

requirement akin to that which accompanies application of the other terms in the

same statutory phrase" - such as fraud, embezzlement, and larceny.  Bullock v.

Bankchampaign, N.A., 133 S.Ct. 1754 at 1757, 185 L.Ed.2d 922, 81 USLW 4292

(2013)  And the Supreme Court specified that for this element to be satisfied, the

fiduciary must have acted with actual knowledge, with "willful blindness," or with "bad faith, moral turpitude, or other immoral conduct . . . ." Id 133 S. Ct. at 1756.

### 1. Trust

Plaintiff alleges that there was a trust of which the defendant was a trustee. This allegation is based upon the New York Lien Law.    Essentially New York Lien Law provides that a subcontractor is to hold the proceeds from any job in trust for all entities who the subcontractor is indebted to for work relating to that job, until such time as all entities are paid in full.  While state law can be consulted, whether a debtor was acting in a fiduciary capacity is a matter of federal law. See In re Hayes, 183 F.3d 162, 166-67; Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir.1986); Carlisle Cashway, Inc. v. Johnson (In re Johnson), 691 F.2d 249, 251 (6th Cir.1982); Angelle v. Reed (In re Angelle), 610 F.2 1335, 1341 (5th Cir.1980); Prudential-Bache Securities v. Sawyer (In re Sawyer), 112 B.R. 386, 389 (D.Colo.1990); Schwalbe v. Gans (In re Gans), 75 B.R. 474, 489 (Bankr.S.D.N.Y.1987).   While state law may create a trust, it is federal law that must be consulted to determine whether in fact a trust exists.

The plaintiff alleges that there were many jobs for which the defendant purchased materials and that these purchases were job tracked. But plaintiff has not identified a single job location by address. (Amended Complaint paragraphs 14-15.) Some of the job names appearing on the invoice are Javier, Stock and Pickup. (Amended Complaint Exhibit C Doc 13-13) In fact plaintiff has not identified a single job site at which any materials sold by plaintiff were used for the improvement of real property.

Plaintiff presumes that since it sold materials to the debtor, the debtor must have received funds for performing work on the jobs that the material was used for, and that these funds, which would be trust funds, would cover all the expenses of each and every particular job alleged within its amended complaint. And further, plaintiff assumes, defendant instead of paying the plaintiff, misappropriated the funds held in trust.

Under <u>Article 3A of the N.Y. Lien Law§ 74-1</u>, the trustee [debtor] is authorized to determine the order and manner of payment of any trust claims and to apply any trust asset to any purpose of the trust. Trust claims include all other legitimate creditors as well as laborers. Additionally, payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is

obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party are also properly payable from the trust. <u>N.Y. Lien Law§ 71</u> (2)(d).  Thus a subcontractor would be free to pay a new materialman for the same job site even though the former materialman had an outstanding invoice.  So while the subcontractor is a trustee, he can in certain ways act against the interest of his beneficiary.

Further, while a trustee, as a general rule, cannot commingle trust funds, New York Lien Law explicitly permits it. <u>N.Y. Lien Law§ 75</u>    This provision actually contradicts the general rule for trusts in New York.  "The trustee has a duty to segregate trust property, and should not mingle trust funds with his own (Restatement [Second] of Trusts § 179, comment b). Commingling trust funds with a trustee's own funds has been held a breach of trust, although such a rule is more a matter of policy than one of law" (see Matter of Lincoln Rochester Trust Company, 201 Misc. 1008 1013, 111 N.Y.S.2d 45 Surrogates Court Monroe County 1952).   Defendant would submit that a trustee who is not required to hold funds in trust is no trustee under the Bankruptcy Code.

New York Lien Law also has some odd provisions regarding the enforcement of a beneficiary's rights.   A beneficiary may only requests records regarding the trust 30 days after payment of the beneficiary's claim is due.  N.Y. Lien Law§ 76(1) Further, a beneficiary may not bring an individual action against the trust, but can only bring a class action and must in the first instance comply with all the requirements of NY CPLR Article 9 including numerosity. N.Y. Lien Law§ 77(1)

This New York statue has created a trust where the trustee need not hold monies in trust, may act in his own interest and adverse to the interest of a beneficiary, and where a beneficiary has no ability to enforce his rights under the trust, except in a class action and then only, at least in the first instance, where numerosity is present.

## 2.  Fiduciary Capacity

The Bankruptcy Code does not define "fiduciary capacity." However, the bankruptcy courts in this circuit have made it clear that the "broad general definition of fiduciary, involving confidence, trust and good faith, is not applicable in discharge-ability proceedings under § 523(a)(4)." Wisell v. Wisell (In re Wisell), 494 B.R. 23, 38 (Bankr. E.D.N.Y. 2011) (quoting Zohlman v. Zoldan, 226 B.R. 767, 772 ( S.D.N.Y. 1998)). The meaning of fiduciary for § 523(a)(4) purposes is a

matter of federal law. <u>Zohlman v. Zoldan,</u> 226 B.R. at 772. The definition of

fiduciary is to be narrowly construed so that it does not reach debtor-creditor

transactions in which the debtor merely violated the terms of his commercial

agreement with the creditor. *Schwalbe v. Gans (In re Gans),* 75 B.R. 474, 489

(Bankr.S.D.N.Y. 1987) (internal quotations omitted). The fiduciary relationship

must be pursuant to either an express or technical trust, not to "constructive or

implied trusts, or any trust where the existence of the trust is created merely on

the basis of wrongful conduct." <u>Id.</u> However, bankruptcy courts may look to state

law to determine whether a trust exists. Id. at 773. "The statute must define the

trust res, spell out the trustee's fiduciary duties and impose a trust prior to and

without reference to the wrong which created the debt." *Woodworking Enters.,*

*Inc. v. Baird (In re Baird),* 114 B.R. 198, 202 (B.A.P. 9th Cir. 1990).

    In a case involving a convenience store owner who had defaulted on

payments to the Illinois state lottery the Seventh Circuit found a debt

dischargeable even though the State of Illinois had passed laws requiring that all

lottery receipts be held in trust and that all lottery sales be kept separate from

other store revenues. *Marchiando, Matter of*, 13 F.3d 1111 (C.A.7 (Ill.), 1994)  The

court did so because it found that even though a statutory trust had been created

no fiduciary relationship existed.   Simply put the store clerk was not the fiduciary

of the State of Illinois.  The court stated:

 If we probe more deeply the distinction between the fiduciary

relation that imposes real duties in advance of the breach and the

fiduciary relation that does not we find that the first group of cases

involve a difference in knowledge or power between fiduciary and

principal which, as we put it in Maksym v. Loesch, supra, 937 F.2d at

1242, gives the former a position of ascendancy over the latter. See

also Kham & Nate's Shoes No. 2, Inc. v. First Bank, 908 F.2d 1351,

1357 (7th Cir.1990); Weinberger v. Kendrick, 698 F.2d 61, 78-79 (2d

Cir.1982) (Friendly, J.); Gratz v. Claughton, 187 F.2d 46, 49 (2d

Cir.1951) (L. Hand, J.). The fiduciary may know much more by reason

of professional status, or the relation may be one that requires the

principal to repose a special confidence in the fiduciary; both factors

are present in the case of a lawyer-client relation and also the

relation between director and shareholder or managing partner and

limited partner. Or the principal may be a child, lacking not only

knowledge but also the power to act upon it. These are all situations

in which one party to the relation is incapable of monitoring the

other's performance of his undertaking, and therefore the law does

not treat the relation as a relation at arm's length between equals.

*Marchiando, Matter of*, 13 F.3d 1111 at 1116(C.A.7 (Ill.), 1994)

A purchaser of electrical supplies simply does not stand in a fiduciary

capacity with the one who has sold him those supplies.

### 3. Defalcation While Acting in a Fiduciary Capacity

Next, the Court must determine whether the Debtor has, based on the

alleged conduct, committed defalcation while acting in a fiduciary capacity under

§ 523(a)(4). The Supreme Court held that defalcation for purposes of § 523(a)(4)

of the Bankruptcy Code requires an "intentional wrong," "conduct the fiduciary

knows is improper" or "reckless" conduct. *Bullock v. BankChampaign*, N.A., 569 U.

S. ___, ___ 133 S.Ct. 1754 1759, 185 L.Ed.2d 922 (2013). The Second Circuit, as

recognized by the Supreme Court, was employing a similar standard. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. 2007) (defining defalcation as "conscious misbehavior or extreme recklessness"); *Zohlman v. Zoldan*, 226 B.R. at 778 (defining defalcation as "willful neglect"—something akin to recklessness or gross negligence.). The Supreme Court, in *Bullock*, describes a fiduciary's conduct as recklessness where "the fiduciary 'consciously disregards' (or is wilfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Bullock*, 133 S.Ct. at 1759-60. The "standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable." *In re Hyman,* 502 F.3d at 69.

The amended complaint simply recites in a legally conclusory fashion that the debt cannot be discharged because of the debtor's intentional, willful, knowing, reckless failure and/or conscious disregard of his fiduciary duty as trustee..." (Complaint paragraph 30).   Merely reciting legal conclusions neither satisfies the general pleading requirements let alone the requirements of Rule 9. Further even the conclusory allegations do not meet the legal standard for defalcation.   The Supreme Court in Bullock held as follows:

Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See id., § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Id., § 2.02(2)(c), at 226 (emphasis added). Cf. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)

(defining scienter for securities law purposes as "a mental state

embracing intent to deceive, manipulate, or defraud")

*Bullock v. Bankchampaign*, *N.A.*, 133 S.Ct. 1759-1760, 185 L.Ed.2d 922, 81 USLW

4292 (2013)

A finding of defalcation begins with a showing that the fiduciary trustee had

knowledge that he was in fact a fiduciary and trustee.  There is not a single fact

alleged that would lead anyone to believe that the debtor in this matter knew he

was a fiduciary or trustee.  There is nothing alleged that would give anyone, any

basis for believing that the debtor and creditor conducted themselves as trustee

and beneficiary.   To the contrary, each one of the attached exhibits demonstrate

that this is a simple a debtor creditor relationship.

Wherefore the defendant requests that the complaint be dismissed.

Dated: September 3, 2015                                    s/LawrenceKatz
                                                           Lawrence Katz