UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                              Chapter 7

Javier Castagnola,

                                              Case No. 14-75123-las

                       Debtor.
-----------------------------------------------------------------x
Michaels Electrical Supply Corp.,

                       Plaintiff,

          -against-                               Adv. Pro. No. 15-8163-las


Javier Castagnola,

                       Defendant.
-----------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

### I.    Introduction

Plaintiff Michael's Electrical Supply Corp. brings this action asserting that the debt

owed to it by defendant Javier Castagnola, the debtor in this chapter 7 case, is not

dischargeable under 11 U.S.C. § 523(a)(4).[1]  Nondischargeability under § 523(a)(4) requires a

showing that the debt at issue was obtained by (i) fraud or defalcation while acting in a

fiduciary capacity, (ii) embezzlement, or (iii) larceny.  In its amended complaint, plaintiff

alleges that its debt in the amount of $36,939.83 arises out of the misappropriation of trust

funds in violation of Article 3-A of the New York Lien Law[2] by defendant.  Plaintiff contends

that defendant's failure to account for and pay over trust fund monies renders its debt

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)".

[2] N.Y. Lien Law §§ 70-79-a (Consol. 2016) ("Article 3-A").

1

nondischargeable under § 523(a)(4) based upon defendant's defalcation while acting in a

fiduciary capacity.  In the alternative, plaintiff asserts that defendant's conduct is larcenous

and, as such, constitutes grounds to except plaintiff's debt from discharge under § 523(a)(4).

Defendant has moved to dismiss the amended complaint in its entirety under Rule

12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule

7012.  The Court has reviewed and carefully considered the parties' arguments and

submissions and, for the reasons discussed below, defendant's motion is granted in part and

denied in part.  The claim of larceny is dismissed for failure to state a claim, but plaintiff's

claim for defalcation shall proceed.

## II.    Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the

Standing Order of Reference entered by the United States District Court for the Eastern

District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by

Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.  This is a core

proceeding under 28 U.S.C. § 157(b)(2)(I) in which final orders or judgment may be entered

by this Court pursuant to 28 U.S.C. § 157(b)(1).

## III.    Background

### A.  Factual Allegations

The following is a summary of the allegations contained in the Amended Complaint

[Adv. Dkt. No. 17],[3] which the Court takes to be true for the purposes of this motion, drawing

all reasonable inferences in favor of plaintiff. *See Weshnak v. Bank of America, N.A.*, 451 F.

App'x 61, 61 (2d Cir. 2012) (at the motion to dismiss stage, the court "accept[s] all factual

---

[3] Unless otherwise stated, citations to docket entries in the adversary proceeding, Adv. Pro. No. 15-8163, are cited as "[Adv. Dkt. No. ____]", and docket entries in the main bankruptcy case, Case No. 14-75123, are cited as "[Bankr. Dkt. No. ____]".

allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's

favor.") (internal citation omitted).

Plaintiff is a New York corporation that sells electrical supplies. ¶ 4.[4]  Defendant is

an electrical subcontractor. ¶ 3.  On or about November 14, 2005, defendant completed

plaintiff's credit application and agreement ("Credit Agreement").  ¶ 11. [Adv. Dkt. No. 17-2,

Exhibit A].  The Credit Agreement provides for payment on the 10th day of the month

following the month of purchase.  Thus, payment terms range from 10 to 40 days depending

on the date of purchase in the prior month.  The Credit Agreement further provides that if

payment is not made within 30 days of the due date, interest is charged on the outstanding

balance at 1.5% per month, and plaintiff may file a Uniform Commercial Code Financing

Statement on defendant's accounts receivable as collateral security for the outstanding

balance. *See* Credit Agreement, Exhibit A.

During the period December 2007 through April 2008, defendant purchased electrical

supplies from plaintiff, on credit, for use in the course of twenty-four real property

improvement jobs.  ¶¶ 10, 15, 16.  Plaintiff maintained purchase orders and invoices for the

materials sold to defendant.  ¶ 13.  According to plaintiff, defendant received payment for

work performed at these various jobs. ¶ 18.  Plaintiff contends that the funds received by

defendant on these various jobs constitute trust funds under Article 3-A. ¶ 9.  As such,

plaintiff alleges that the funds received by defendant were to be held in trust for plaintiff as

beneficiary of trust fund monies. ¶¶ 19, 20.  Rather than pay plaintiff, as a supplier of

materials for use by defendant on the various real property improvement jobs, plaintiff

alleges that defendant recklessly or with conscious disregard of his fiduciary duties diverted

---

[4] All citations in the form "¶ __" are to the Amended Complaint.  Unless otherwise noted, where citations to the Amended Complaint are made, the facts and statements of law in this Memorandum Opinion and Order are as alleged by plaintiff and do not represent the findings by this Court.

the trust fund monies and used them for purposes other than payment of sums due and

owing to plaintiff.  ¶ 21.  Plaintiff further contends that defendant was obligated as a

statutory trustee under Article 3-A to maintain records showing the receipt and expenditure

of trust funds. ¶ 25.  Plaintiff argues that the failure to do so gives rise to a presumption of

diversion under Article 3-A.  ¶ 26.  Additionally, plaintiff argues that defendant's application

of trust funds in a manner other than that required under the New York Lien Law renders

defendant guilty of larceny. ¶¶ 27, 28.  According to plaintiff, defendant remains liable to

plaintiff in the amount of $36,939.83 for electrical supplies purchased by defendant on credit

and identified on purchase orders and invoices maintained by plaintiff. ¶ 17.

### B.  Procedural History

Defendant filed his chapter 7 petition on November 13, 2014.  [Bankr. Dkt. No. 1].

Plaintiff is the lone creditor listed by defendant in his schedules of liabilities filed on the

same day he commenced his chapter 7 case.  *See* Schedules D, E, and F. [Bankr. Dkt. No. 1].

Defendant scheduled plaintiff's claim in the amount of $50,000, and the claim is not listed as

disputed, contingent or unliquidated.[5]  *See* Schedule F. [Bankr. Dkt. No. 1].  Defendant

received his chapter 7 discharge on May 7, 2015.[6] [Bankr. Dkt. No. 23].

Plaintiff's time to commence an action objecting to defendant's discharge or to the

dischargeability of the debt due to plaintiff was extended to April 27, 2015 by Order of the

Court dated April 10, 2015. [Bankr. Dkt. No. 21].  On April 23, 2015, plaintiff filed its initial

Complaint. [Adv. Dkt. No. 1].  In the Complaint, plaintiff brought an action under § 523(a)(4)

alleging that the debt owed to it by defendant arose out of defendant's defalcation while

---

[5]  This is a no asset chapter 7 case.  On December 17, 2014, the chapter 7 trustee, Kenneth Kirschenbaum, Esq., issued a report of no distribution.

[6] Under § 523(a)(4) a discharge under § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

acting in a fiduciary capacity.[7]  After defendant moved to dismiss, the Court granted

plaintiff's motion for leave to amend. [Adv. Dkt. No. 12].  On August 20, 2015, plaintiff filed

the Amended Complaint.  In the Amended Complaint, plaintiff renewed its allegation that

the debt arose out of defendant's defalcation and added an additional allegation that

defendant committed larceny within the meaning of § 523(a)(4).  As such, the Amended

Complaint contains a single set of operative facts to support two causes of action under §

523(a)(4).  Plaintiff alleges that defendant's liability is nondischargeable under § 523(a)(4)

based on defendant's defalcation of trust funds while acting in a fiduciary capacity.

Additionally, plaintiff avers that its debt is excepted from discharge under § 523(a)(4)

because it was obtained by larceny owing to defendant's misappropriation of funds and

failure to pay the trust claim of plaintiff.

    Defendant moved to dismiss the Amended Complaint under Rule 12(b)(6)  for failure

to state a claim upon which relief can be granted. [Adv. Dkt. No. 16].  Plaintiff opposed. [Adv.

Dkt. No. 18].  After oral argument, the Court took the matter under advisement.

## IV.    Standard of Review

    A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief," in order to "give the defendant fair notice of what the  . . . claim

is and the ground upon which it rests." Fed. R. Civ. P. 8(a)(2)[8]; *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "To survive a motion to dismiss, a complaint must

---

[7] Although the Complaint and the Amended Complaint seek the nondischargeability of debt under § 523(a)(4),
nowhere in the body of the Complaint or the Amended Complaint, or in their respective prayer for relief, did
plaintiff mention the term "defalcation." The Court does not find that plaintiff's failure to specifically mention the
term "defalcation" to be fatal and has considered the sufficiency of the factual allegations themselves in ruling on
the motion to dismiss.  Based on the factual allegations, the Court could construe the Complaint and the now
operative pleading, the Amended Complaint, as seeking nondischargeability of debt under § 523(a)(4) based on
defendant's alleged defalcation of trust funds while acting in a fiduciary capacity and larceny.

[8] Fed. R. Civ. P. 8 is made applicable here by Bankruptcy Rule 7008.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Although on a motion to dismiss all well-pleaded factual allegations in the complaint are assumed true, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint; not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation mark omitted).

When considering a motion to dismiss, a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111; *see also* Fed. R. Civ. P 10(c)[9] ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d

---

[9] Fed. R. Civ. P. 10 is made applicable here by Bankruptcy Rule 7010.

147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d

69, 72 (2d Cir. 1995) (per curiam)).  Courts may also take judicial notice of matters of public

record when considering motions to dismiss.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767,

773-74 (2d Cir. 1991).

## V.    Discussion

### A. Defalcation

To state a claim that a debt is nondischargeable by reason of fraud or defalcation[10]

while acting in a fiduciary capacity, a plaintiff must adequately plead three elements:  "first,

that the debt was incurred in connection with an express or technical trust, second, that the

debtor acted in a fiduciary capacity with respect to the trust, and third, that the debtor

engaged in fraud or defalcation within the meaning of bankruptcy law." *VW Credit, Inc. v.

Salim (In re Salim),* 2015 WL 1240000, at *14 (Bankr. E.D.N.Y. Mar. 16, 2015); *In re Saurez,*

367 B.R. 332, 351 (Bankr. E.D.N.Y. 2007); *In re Duncan*, 331 B.R. 70, 76 (Bankr. E.D.N.Y.

2005).

With respect to the first element, an express trust may be created by a formal trust

agreement or by statute.[11] *In re Saurez*, 367 B.R. at 351. If by agreement, the parties must

intend to create a trust relationship. *Id.*  A technical trust, on the other hand, may be created

by state statute or common law doctrines that impose trust-like obligations on a party. *In re

Suarez*, 376 B.R. at 352; *In re Ladieu*, 2011 WL 748566, at *16 (Bankr. D. Vt. Feb. 24, 2011).

---

[10] The Amended Complaint alleges a defalcation; plaintiff has not brought a claim for fraud while acting in a fiduciary capacity. "A claim of defalcation need only satisfy the general pleading requirements of Rule 8(a)." *In re Nofer*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014). The liberal notice pleading under Rule 8(a) only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 570.

[11] A statutory trust will be considered an express trust for purposes of § 523(a)(4) when: (1) property or money is entrusted to a trustee; (2) a statute creates or identifies a fiduciary duty upon the trustee; and (3) the trust was in place when the defalcation giving rise to the debt occurred. *See In re Suarez*, 367 B.R. at 352 (quoting *In re Duncan*, 331 B.R. at 77).

*See also* 4 *Collier on Bankruptcy* ¶ 523. 10[1][d] (Alan N. Resnick & Harry J. Sommer, eds., 16th ed. 2016). "Constructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust *ex maleficio*) do not create a fiduciary relationship. Put another way (sic), the fiduciary relationship must exist prior to the act creating the debt; a trust relationship cannot be said to arise merely from the wrongful conduct itself." *Zohlman v. Zoldan,* 226 B.R. 767, 772 (S.D.N.Y. 1998) (internal citations omitted).

Courts have consistently recognized that the statutory duties imposed by the New York Lien Law are sufficient for demonstrating the existence of an express or statutory trust in the context of a § 523(a)(4) nondischargeability action. *See In re Suarez*, 367 B.R. at 351-52 (recognizing that the New York Lien Law creates a valid trust for purposes § 523(a)(4)); *In re Dobrayel*, 287 B.R. 3, 15 (Bankr. S.D.N.Y. 2002) ("Hence, Article 3–A clearly creates an express trust within the meaning of Section 523(a)(4)"); *In re Henderson*, 423 B.R. 598, 623 (Bankr. N.D.N.Y. 2010) (same); *In re Tripp*, 189 B.R. 29, 35 (Bankr. N.D.N.Y. 1995) (same).

As for the second element, courts have narrowly construed the term fiduciary for purposes of § 523(a)(4) "so that it does not reach ordinary debtor-creditor transactions in which the debtor merely violated the terms of his commercial agreement with the creditor." *Zohlman*, 226 B.R. at 772. "The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)"; rather, for purposes of § 523(a)(4), who is a fiduciary "is a matter of federal law." *Id.* While federal law determines whether or not a fiduciary relationship exists in the context of bankruptcy proceedings, state law determines whether an express, technical or statutorily imposed trust exists. *Id.* at 767; *In re Saurez,* 367 B.R. at 352-55 (applying New York law to determine that a fiduciary relationship existed for purposes of plaintiff's nondischargeability proceeding). Here, the applicable state law for determining whether a trust or fiduciary

relationship exists is the New York Lien Law, and Article 3-A "creates an express trust within the meaning of Section 523(a)(4)." *In re Dobrayel*, 287 B.R. at 15.

With respect to the third element, defalcation is not defined in the Bankruptcy Code. The Supreme Court, however, recently held that within the context of § 523(a)(4), defalcation requires an "intentional wrong," "conduct the fiduciary knows is improper" or "reckless conduct." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013). As stated by the Supreme Court,

> where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty…. That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Id.* at 1759-60 (internal citations omitted).

Despite the absence of specificity regarding certain factual matters, the Court finds that plaintiff's allegations are sufficient to state a claim for defalcation that is plausible on its face. The allegations allow the Court to draw the reasonable inference that under Article 3-A, a statutory trust was created when defendant received payment on each of the home improvement jobs identified by plaintiff,[12] and became obligated to plaintiff as a trust fund beneficiary to use the funds he received to pay for materials furnished by plaintiff in connection with each of these jobs, *see* N.Y. Lien Law §§ 70.1, 70.6, 71.2, 72.1, and that under

---

[12] Plaintiff pleads on information and belief that defendant received payment on the home improvement jobs identified by plaintiff. ¶18. A plaintiff may plead facts alleged on information and belief "where the facts are peculiarly within the possession of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

Article 3-A defendant was obligated to maintain books and records to properly account for

trust assets, *see* N.Y. Lien Law § 75.4.  The Court has considered defendant's arguments and

finds them insufficient to warrant dismissal of the claim for defalcation.  Defendant's motion

is therefore denied to the extent it seeks dismissal of plaintiff's claim under § 523(a)(4) for

defalcation.

### B.  Larceny

Plaintiff alleges that the misappropriation of the funds received by defendant and the

failure to pay plaintiff for materials supplied by plaintiff in connection with the home

improvement jobs constitutes the crime of larceny under N.Y. Lien Law § 79-a.  Larceny,

unlike defalcation, does not require a fiduciary relationship. *Bullock*, 133 S. Ct. at 1760

(Section 523(a)(4) "makes clear that [larceny and embezzlement] apply outside the fiduciary

context."); 4 *Collier* ¶ 523.10[2] ("In section 523(a)(4), the term 'while acting in a fiduciary

capacity' does not qualify the words 'embezzlement' or 'larceny.' Therefore, any debt resulting

from embezzlement or larceny falls within the exception of clause (4).") (footnote omitted).

For purposes of § 523(a)(4), larceny is defined as the "fraudulent and wrongful taking

and carrying away of the property of another with intent to convert such property to the

taker's use without the consent of the owner." *In re Crossfield*, No. 8-11-72505-REG, 2012

WL 3637919, at \*5 (Bankr. E.D.N.Y. Aug. 22, 2012) (quoting *In re Balzano*, 127 B.R. 524, 532

(Bankr. E.D.N.Y. 1991)).  To bring a claim for larceny, a plaintiff "must show that the debtor

'wrongfully took property from the rightful owner with fraudulent intent to convert such

property to [the debtor's] own use without the owner's consent.'" *In re Nofer*, 514 B.R. at 357

(quoting *Dynamic Food Serv. Equip., v. Stern* (*In re Stern*), 231 B.R. 25 (Bankr. S.D.N.Y.

1999); *see Bullock* 133 S. Ct. at 1760 ("larceny requires taking and carrying away another's

property").  Larceny cannot exist "where the debtor's original possession of the [property]

was lawful." *In re Crossfield*, 2012 WL 3637919, at \*5; *In re Henderson*, 423 B.R. at 625

("Where payments are lawfully received pursuant to a contract, as they were in the instant case, larceny cannot exist for purposes of § 523(a)(4)"); 4 *Collier* ¶ 523.10[2] ("As distinguished from embezzlement, the original taking of the property must be unlawful.") (footnote omitted).

Additionally, larceny requires a showing of fraudulent intent, *see In re Nofer*, 514 B.R. at 357, which must exist at the time of the original taking, *see In re Hyman*, 502 F.3d 61 (2d Cir. 2007); *Adamo v. Scheller* (*In re Scheller*), 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001). As such, where a plaintiff brings a claim for larceny under § 523(a)(4), the complaint must satisfy the heightened pleading requirements under Fed. R. Civ. P. 9(b).[13]   *In re Nofer*, 514 B.R. at 357; *In re Ippolito*, No. 12-70632-AST, 2013 WL 828316 (Bankr. E.D.N.Y. Mar. 6, 2013); *Santaro v. Sgroi*, No. 5:10-CV-357, 2010 WL 3825643 (N.D.N.Y. Sept. 24, 2010).  While "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "the heightened pleading standard requires a plaintiff to support allegations with facts which give rise to a 'strong inference' of fraudulent intent." *In re Nofer*, 514 B.R. at 356.  "A strong inference of fraudulent intent 'may be established either by (a) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

Applying these legal principles, the Court finds that plaintiff has failed to allege the facts giving rise to a plausible inference that defendant is liable for larceny.  First, plaintiff has not met the heightened pleading requirement under Rule 9(b). Plaintiff fails to allege the

---

[13] Fed. R. Civ. P. 9 is made applicable here by Bankruptcy Rule 7009.

circumstances constituting a strong inference of fraudulent intent with the particularity

required by Rule 9(b). Second, regardless of whether the Amended Complaint is subject to

Rule 9(b), plaintiff would still need to satisfy Rule 8(a)(2).  Here, the allegations that the debt

at issue was obtained by larceny are spartan and do not satisfy the general pleading

requirements of Rule 8(a).  A broad, unsupported, and conclusory statement that defendant

committed larceny is not sufficient.  It is precisely the type of "naked assertion" that does not

survive a motion to dismiss.  *See Twombly*, 550 U.S. at 557.

Additionally, the allegations in the Amended Complaint do not allow the Court to

draw the reasonable inference that funds received by defendant in connection with the home

improvement jobs came into his hands unlawfully. Defendant acquired the alleged trust

funds legally when he received payment for the work he performed on the home

improvement jobs identified by plaintiff.  Because it appears that defendant was properly in

possession of the funds, the Court finds that plaintiff has failed to allege facts sufficient for

this Court to conclude that defendant committed larceny.

Accordingly, defendant's motion to dismiss the claim of larceny for failure to state a

claim is granted.

## VI.    Conclusion

For the reasons discussed above, defendant's motion to dismiss is granted in part and

denied in part.  Plaintiff's claim for larceny is dismissed for failure to state a claim.

Plaintiff's remaining claim for defalcation while acting in a fiduciary capacity shall proceed.

Defendant shall file an answer to the Amended Complaint within 21 days of this Memorandum Opinion and Order.

The Court will hold a status conference on May 11, 2017 at 10:00 a.m.



**Dated: April 11, 2017**
      **Central Islip, New York**
                                **Louis A. Scarcella**
                            **United States Bankruptcy Judge**